# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES DUMON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CNOVA N.V., VITOR FAGÁ DE ALMEIDA, GERMÁN QUIROGA, EMMANUEL GRENIER, JEAN-CHARLES NAOURI, LÍBANO MIRANDA BARROSO, ELEAZAR DE CARVALHO FILHO, DIDIER LÉVÊQUE, RONALDO IABRUDI DOS SANTOS, PEREIRA, ARNAUD STRASSER, FERNANDO TRACANELLA, NICOLAS WOUSSEN, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., BNP PARIBAS SECURITIES CORP., HSBC SECURITIES (USA) INC., NATIXIS SECURITIES AMERICAS LLC, and SG AMERICAS SECURITIES, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles Dumon ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Cnova N.V. ("Cnova" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Cnova; and (c) review of other publicly available information concerning Cnova.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired Cnova securities: (1) pursuant and/or traceable to the Company's Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with the Company's initial public offering on or about November 19, 2014 (the "IPO" or the "Offering"); and/or (2) between November 19, 2014 and December 18, 2015, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies under the Securities Act of 1933 (the "Securities Act") and under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Cnova is an e-commerce company that offers and sells products online. The Company's most significant product categories are home appliances, consumer electronics, computers, and home furnishings. The Company's brands include Cdiscount, Extra, Casas Bahia, and Ponto Frio.

3.     On November 19, 2014, Cnova priced its IPO of 26,800,000 shares, at a price of $7.00 per share, exclusive of the underwriters' over-allotment option to purchase 4,020,000 additional shares.

4.      On December 18, 2015, after the market closed, Cnova issued a press release entitled "Cnova N.V. Initiates a Review of Inventory in Brazil." Therein, in relevant part, the Company disclosed that its Board of Directors engaged legal advisors and external forensic accountants to perform a review of issues related to inventory management. According to the Company, the issues involve the handling of product returns and damaged product inventory at distribution centers of Cnova's Brazilian subsidiary, Cnova Comércio Eletrônico S.A. (Cnova Brazil).

5.      On this news, shares of Cnova declined $0.53 , or nearly 18% to close at $2.42 on December 21, 2015, on unusually heavy volume.

6.      On January 12, 2016, the Company issued a press release entitled "Cnova — Update on Investigation into Brazil Inventory Management and Other Topics" confirming that the Company engaged in improper accounting practices. Therein, in relevant part, the Company disclosed:

As of the date of this press release:

- Investigations performed so far in connection with inventory management have uncovered a potential overstatement of Cnova net sales by approximately R$110 million (approximately €30 million) on a cumulative basis as of December 31, 2015 (adjusted in 4Q15 numbers on a preliminary basis).

- A comprehensive physical count as of December 31, 2015, of all seven of its distribution centers in Brazil has been completed with the support of external consultants. The results currently indicate that no significant adjustment is necessary based on the inventory count. They indicate, however, that a write-off linked to the valuation of damaged/returned items, which represents approximately 10% of total inventory, will be necessary. In addition, a material discrepancy in accounts receivable related to the damaged/returned items was also identified. The combined impact, based on preliminary estimates, would result in non-cash provisions of between R$110 — 130 million (approximately €30 — 35 million) that would reduce Cnova's EBIT.

* * *

**Accounts Payable at Cnova Brazil**

The company has identified additional supplier or vendor accounts payable balances in the amount of approximately R$70 million (approximately €20 million). A related provision is also planned to be booked that will reduce Cnova's EBIT.

* * *

**Benchmark on Inventory Valuation**

As a result of benchmarking of inventory valuation of e-commerce companies, warehouse reception and storage costs will no longer be incorporated into a retail-sector inventory valuation but directly expensed through income as is widely practiced in the e-commerce sector. The cumulative impact is a negative one-off of €10 million.

* * *

The company stresses that the assessment of the impact of the above on 2015 and potentially prior periods (annual consolidated financial statements and quarterly financial communication) is currently underway.

* * *

**Fourth Quarter and Full Year 2015 Financial Results Release Date**

Subject to progress of the ongoing inventory management investigation in Brazil, Cnova currently plans to release Fourth Quarter and Full Year 2015 Financial Results on February 24, 2016, at 07:45 CET.

7.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company overstated net sales; (2) that the Company failed to properly write-off the value of certain returned items; (3) that there was a material discrepancy in accounts receivable related to the damaged/returned items; (4) that, as such, the Company's EBIT was overstated; (5) that the company lacked adequate internal controls; and (6) that, as a result of

the foregoing, the Company's financial statements and Defendants' statements about Cnova's business, operations, and prospects, were materially false and misleading at all relevant times.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). A significant portion of Defendants' actions, and the subsequent damages, took place in this Judicial District. Additionally, Cnova shares traded within this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Cnova shares during the Class Period, pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Cnova is a Netherlands company with its principal executive offices located at WTC Schiphol Airport, Tower D, 7th Floor, Schiphol Boulevard 273, 1118 BH Schiphol, The Netherlands.

15.     Defendant Vitor Fagá de Almeida ("Almeida") was, at all relevant times, Chief Financial Officer ("CFO") of Cnova. Almeida also signed or authorized the signing of the Company's Registration Statement as CFO.

16.     Defendant Germán Quiroga ("Quiroga") was, at all relevant times, Co-Chief Executive Officer ("Co-CEO") of Cnova. Quiroga also signed or authorized the signing of the Company's Registration Statement as a director and Co-CEO.

17.     Defendant Emmanuel Grenier ("Grenier") was, at all relevant times, Co-CEO of Cnova. Grenier also signed or authorized the signing of the Company's Registration Statement as Co-CEO.

18.     Defendant Jean-Charles Naouri ("Naouri ") was a director and Chairman of Cnova, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.     Defendant Líbano Miranda Barroso ("Barroso") was a director of Cnova and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.      Defendant Eleazar de Carvalho Filho ("Filho") is a director of Cnova and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.      Defendant Didier Lévêque ("Lévêque") is a director of Cnova and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.      Defendant Ronaldo Iabrudi dos Santos Pereira ("Pereira") is a director of Cnova and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.      Defendant Arnaud Strasser ("Strasser") is a director of Cnova and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.      Defendant Fernando Tracanella ("Tracanella") was CFO and HR Director of Nova Pontocom Comércio Eletrônico S.A., and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.      Defendant Nicolas Woussen ("Woussen") was Deputy CEO in charge of Finance, Legal and Human Resources of Cdiscount, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26.      Defendants Almeida, Quiroga, and Grenier are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Cnova's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to

them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

27.     Defendants Almeida, Quiroga, Grenier, Naouri, Barroso, Filho, Lévêque, Pereira, Strasser, Tracanella, and Woussen are collectively referred to hereinafter as the "Section 11 Individual Defendants."

28.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as lead underwriter of the Company's IPO. In the Offering, Morgan Stanley agreed to purchase 10,050,000 shares of Cnova, exclusive of the over-allotment option.

29.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter of the Company's IPO. In the Offering, J.P. Morgan agreed to purchase 6,030,000 shares of Cnova, exclusive of the over-allotment option.

30.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") served as an underwriter of the Company's IPO. In the Offering, Merrill Lynch agreed to purchase 2,680,000 shares of Cnova, exclusive of the over-allotment option.

31.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter of the Company's IPO. In the Offering, Credit Suisse agreed to purchase 2,680,000 shares of Cnova, exclusive of the over-allotment option.

32.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") served as an underwriter of the Company's IPO. In the Offering, Deutsche Bank agreed to purchase 2,680,000 shares of Cnova, exclusive of the over-allotment option.

33.     Defendant BNP Paribas Securities Corp. ("BNP Paribas") served as an underwriter of the Company's IPO. In the Offering, BNP Paribas agreed to purchase 670,000 shares of Cnova, exclusive of the over-allotment option.

34.     Defendant HSBC Securities (USA) Inc. ("HSBC") served as an underwriter of the Company's IPO. In the Offering, HSBC agreed to purchase 670,000 shares of Cnova, exclusive of the over-allotment option.

35.     Defendant Natixis Securities Americas LLC ("Natixis") served as an underwriter of the Company's IPO. In the Offering, Natixis agreed to purchase 670,000 shares of Cnova, exclusive of the over-allotment option.

36.     Defendant SG Americas Securities, LLC ("SG Americas") served as an underwriter of the Company's IPO. In the Offering, SG Americas agreed to purchase 670,000 shares of Cnova, exclusive of the over-allotment option.

37.     Defendants Morgan Stanley, J.P. Morgan, Merrill Lynch, Credit Suisse, Deutsche Bank, BNP Paribas, HSBC, Natixis, and SG Americas are collectively referred to hereinafter as the "Underwriter Defendants."

38.     The Company, the Section 11 Individual Defendants, and Underwriter Defendants, are collectively referred to hereinafter as the "Section 11 Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

39.     Cnova is an e-commerce company that offers and sells products online. The Company's most significant product categories are home appliances, consumer electronics, computers, and home furnishings. The Company's brands include Cdiscount, Extra, Casas Bahia, and Ponto Frio.

40.     On November 19, 2014, the SEC declared effective the Form F-1 that Cnova filed on June 4, 2014 and repeatedly amended, until on or about November 18, 2014, when the Company filed with the SEC the final Form F-1/A (collectively, the "Registration Statement") for the IPO.

41.     On November 19, 2014, Cnova priced its IPO of 26,800,000 ordinary shares, at a price of $7.00 per share, exclusive of the underwriters' exercise of their over-allotment option to purchase 4,020,000 additional shares. According to the Company, after a partial exercise of the underwriters' over-allotment option (an additional 2,357,327 shares), the Offering raised €117.2 million (or approximately $146.6 million) for the Company net of underwriter discounts and expenses.

**Materially False and Misleading
Statements Issued During the Class Period**

42.     The Class Period begins on November 19, 2014. Prior to this day, on November 18, 2014, the Company filed with the SEC its final Registration Statement amendment on Form F-1/A, which forms part of the Registration Statement. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

43.     With respect to internal controls, the Registration Statement, in relevant part, stated:

> *If we do not adequately maintain and develop our financial reporting and internal controls, we may be unable to accurately report our financial results or prevent fraud and may, as a result, become subject to sanctions by the SEC. Establishing effective internal controls may also result in higher than anticipated operating expenses.*

Following the completion of this offering, we will be required to comply with additional regulatory and reporting requirements, including those required by the SEC. Complying with these reporting and other regulatory requirements may place a strain on our systems and resources and may require additional staff and management oversight, which could have a negative effect on our business, financial condition and results of operations.

As a public company, we will be subject to the reporting requirements of the Securities Exchange Act of 1934, as amended, or the Exchange Act, and the requirements of the Sarbanes-Oxley Act of 2002, as amended, or SOX. The Exchange Act requires that we file annual and current reports with respect to our business and financial performance. SOX requires that we maintain disclosure controls and procedures and internal control over financial reporting. We will be required to report on the effectiveness of our internal control over financial reporting starting from our annual filing for the year ended December 31, 2015.

To improve the effectiveness of our disclosure controls and procedures and our internal control over financial reporting, we expect that we will need to continue to improve existing, and implement new, financial reporting and management systems, procedures and controls to manage our business effectively and support our growth in the future, especially because we lack a history of operations as a standalone entity. Any delay in the implementation of, or disruption in the transition to, new or enhanced systems, procedures and controls, or the obsolescence of existing financial control systems, could harm our ability to accurately forecast sales demand and record and report financial and management information on a timely and accurate basis and if we fail to comply with our regulatory and reporting requirements, we might be subject to sanctions or investigations by regulatory authorities such as the SEC.

44.     On November 21, 2014, the Company filed the IPO Prospectus with the SEC.

The Prospectus forms part of the Registration Statement. The Prospectus reiterated the

Company's November 18, 2014 statements regarding internal controls made in the Form F-1/A.

With respect to accounting standards, the Prospectus, in relevant part, stated:

**Management's Responsibility for the Financial Statements**

Management is responsible for the preparation and fair presentation of these financial statements in conformity with International Financial Reporting Standards—IFRS as issued by International Accounting Standards Board—IASB; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free of material misstatement, whether due to fraud or error.

45.     On January 28, 2015, Cnova issued a press release entitled, "Cnova's Q4 and FY 2014 Earnings." Therein, the Company, in relevant part, stated:

AMSTERDAM, January 28, 2015 — Cnova N.V. (Nasdaq: CNV, Euronext Paris: CNV) ("Cnova" or the "Company") today announced its financial results for the quarter and fiscal year ended December 31, 2014.

Certain capitalized terms used throughout this release are defined at the end of the release. For more detail regarding the summary financial information provided in this release, refer to the financial statements and non-GAAP reconciliations included at the end of the release.

**Key Financial and Operational Highlights**

- GMV for 4Q14 increased by 28.6% to € 1,472 million compared to € 1,144 million in 4Q13. GMV for the full year 2014 increased by 26.6% to €4,516 million, compared to €3,567 million in the full year 2013.

- Placed Orders for 4Q14 increased by 38.0% to 10.8 million, compared to 7.9 million in 4Q13. Placed Orders for the full year 2014 increased by 34.3% to 31.7 million, compared to 23.6 million in 2013.

- Active Customers increased by 23.1% to 13.6 million at the end of 2014, compared to 11.0 million at the end of 2013.

- Mobile devices accounted for 21.6% of placed orders value for Cdiscount in 4Q14, compared to 14.0% in 4Q13, and 10.5% of placed orders value for Cnova Brazil in 4Q14, compared to 4.4% in 4Q13.

- Net sales for 4Q14 increased by 19.7% to €1,099 million compared to € 918 million in 4Q13. Net sales for the full year 2014 increased by 19.8% to €3,474 million, compared to €2,899 million in the full year 2013.

- Operating Profit Before Other Expenses Excluding Expansion to New Countries, or Adjusted Operating Profit (1), increased by 34.5% to €35.3 million for 4Q14 and by 58.1% to €37.2 million for the full year 2014.

- In 2014, the Company generated €203 million of Net Cash, and including IPO proceeds, total Net Cash generation was € 341 million. As of December 31, 2014, the Net Cash position was €534 million, compared to €164 million at the end of 2013, representing a cash amount of €1.21 per share.

46.     On March 31, 2015, Cnova filed its Annual Report with the SEC on Form 20-F for the year ended December 31, 2014. Therein, the Company stated: "The Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act") requires that we maintain internal controls over financial reporting and report any material weaknesses in such internal controls." The Company's 20-F was signed by Defendant Almeida, and reaffirmed the Company's financial results previously announced on January 28, 2015.

47.     On April 28, 2015, Cnova issued a press release announcing its first quarter 2015 financial results. Therein, the Company, in relevant part, stated:

AMSTERDAM, April 29, 2015 22:01 — Cnova N.V. (Nasdaq & Euronext in Paris: CNV) ("Cnova" or the "Company") today announced its financial results for the first quarter ended March 31, 2015.

- Strong commercial dynamics: Net Sales growth of +17.8% and GMV growth of +28.2%

- Improving quality of main commercial indicators:

  - Increase in the number of items per Unique Customer by +4.2% in 1Q15 year-over-year for Cnova

  - Increase in the number of orders per Unique Customer by +11.9% in France and +5.4% in Brazil in 1Q15 year-over-year

  - Increase in the mobile share of traffic to 45% at Cdiscount and 25% at Cnova Brazil

- Improvement in Gross Margin excluding Expansion to New Countries(1) by +18 bps as a percentage of net sales

- Increased investment in Logistics and IT for future growth, impacting operating expenses

- Improvement in Net Financial Expense

- Good Free Cash Flow(1) generation of +27.6 M€ on a last twelve months basis vs -47.1 M€ at end of 1Q14, leading to a positive Net Cash position of +71 M€ at end 1Q15. On a constant exchange rate basis, over the last

twelve months, Free Cash Flow(1) generation improved by 92 M€(+25.4 M€in 2015 vs -66.8 M€in 2014)

| Cnova in € millions | 1Q 2014 | 1Q 2015 | YoY change | YoY change (excl. new countries) |
|---|---|---|---|---|
| GMV | 973.7 | 1 248.2 | +28.2% | +27.2% |
| Net sales | 777.4 | 915.5 | +17.8% | +16.6% |
| Gross profit | 96.2 | 113.2 | +17.6% | +18.3% |
| *As a % of net sales* | *12.4%* | *12.4%* | *(-)* | *+18bps* |
| Adjusted EBITDA | -1.4 | -18.2 | n/a | n/a |
| *As a % of net sales* | *-0.2%* | *-2.0%* | *-180bps* | *-127bps* |
| Net financial expense | -15.0 | -5.4 | -64.3% | n/a |
| Adjusted EPS | -0.04€ | -0.06€ | n/a | n/a |
| FCF (LTM) | -47.1 | 27.6 | +74.7 | n/a |
| Net cash / (net financial debt) | -135.2 | 70.8 | +205.9 | n/a |

**Guidance:**

- For the next 9M15 (April 2015 to December 2015), Cnova Net Sales are expected to grow by 19% compared with the same period in 2014, within a plus or minus 150 bps deviation, assuming constant currency(2).

Germán Quiroga, Cnova Co-CEO commented: "In the first quarter, Cnova Brazil significantly outperformed the Brazilian eCommerce market. Growth was strengthened by the successful launch of three additional marketplaces. Combined with this quarter's strategic investments to strengthen Cnova Brazil's infrastructure, we are confident in our ability to execute our growth plans."

Emmanuel Grenier, Cnova Co-CEO added: "In the first three months of 2015, Cdiscount continued to achieve fast top-line growth, increased its gross margin and accelerated strategic investments in logistics and IT to enhance customer service and support future growth."

48.    On July 22, 2015, Cnova issued a press release announcing its second quarter 2015 financial results. Therein, the Company, in relevant part, stated:

- **Strong growth of GMV and net sales:**

  - **GMV**              **+25.8% (€1,154 million)**

  - **Net sales**         **+17.5% (€837 million)**

- **Excellent key commercial performance indicators:**

  - **Traffic**           **+38.9% (396 million visits)**

  - **Orders/customer**   **+ 5.4%**

CLASS ACTION COMPLAINT
13

- **Items/customer**                    **+ 4.3%**

- **Mobile share of traffic**        **36.9% of total traffic vs 29.7% in 2Q14**

- **Significant sequential improvement in France & Brazil in 2nd quarter 2015 in view of important investments in 1Q15 to fuel future growth:**

    - **Gross margin**              **+56 basis points**

    - **EBITDA margin**          **+93 basis points**

    - **EBIT margin**              **+78 basis points**

- **Start-up operations in new countries had an impact on operating margin but contributed to growth according to plan**

- **Last twelve month free cash flow of €28 million and €42 million excluding FX impact**

- **H2 Outlook: increase in 2nd half 2015 net sales of 17.5% (+/- 1.5%) on a currency neutral basis, in line with 2Q net sales growth**

AMSTERDAM, July 22, 2015 22:01 — Cnova N.V. (Nasdaq & Euronext in Paris: CNV) ("Cnova" or the "Company") today announced its financial results for the second quarter ended June 30, 2015.

[continued on next page]

| Key Figures (Unaudited, € millions) | 2Q15 | 1Q15 | 2Q14 | Change Y-o-Y Reported | Change France and Brazil* Vs. 1Q15 | Vs. 2Q14 |
|---|---|---|---|---|---|---|
| Gross Merchandise Value (GMV)(1) | 1,154.1 | 1,248.2 | 967.8 | +19.2%/+25.8%** | -7.5% | 18.2% |
| Net Sales | 836.7 | 915.5 | 755.9 | +10.7%/+17.5%** | -8.7% | 9.5% |
| Gross Profit | 107.6 | 113.2 | 106.7 | +0.8%/+6.9%** | -4.7% | +1.7% |
| France and Brazil* | 108.6 | 113.9 | 106.7 | +1.7% | -4.7% | +1.7% |
| % of Net Sales | 13.1% | 12.6% | 14.1% | -100 bps | +56 bps | -100 bps |
| New countries(2) | (1.0) | (0.7) | — | | | |
| SG&A | (131.3) | (141.2) | (98.0) | +34.0% | -10.1% | +25.5% |
| France and Brazil* | (123.0) | -136.7 | (98.0) | +25.5% | -10.1% | +25.5% |
| % of Net Sales | -14.9% | -15.1% | -13.0% | -189 bps | +23 bps | -189 bps |
| New countries(2) | (8.3) | (4.4) | — | | | |
| Operating EBITDA(3) | (13.2) | (18.2) | 16.3 | -180.9% | -66.9% | -126.8% |
| France and Brazil* | (5.2) | (13.2) | 16.3 | -126.8% | -66.9% | -126.8% |
| % of Net Sales | -0.5% | -1.5% | +2.2% | -269 bps | +93 bps | -269 bps |
| New countries(2) | (8.0) | (5.0) | — | | | |
| Operating EBIT(4) | (23.7) | (28.0) | 8.7 | -370.9% | -15.5% | -264.6% |
| France and Brazil* | (14.4) | (22.9) | 8.7 | -264.6% | -37.1% | -264.6% |
| % of Net Sales | -1.7% | -2.5% | 1.2% | -290 bps | +78 bps | -290 bps |
| New countries(2) | (9.3) | (5.1) | — | | | |
| Net Income/(Loss) | (40.2) | (40.6) | (21.3) | +89.1% | -4.0% | +51.0% |
| % of Net Sales | -4.8% | -4.4% | -2.8% | | | |
| Adjusted EPS (in Euros) | (0.06) | (0.06) | (0.01) | | | |
| Change in Operating Working Capital(5)*** | 129.3 | 160.2 | 73.7 | +55.6 | | |
| Free Cash Flow(6)*** | 27.8 | 91.6 | 65.2 | -37.4 | | |
| Net cash/(Net financial debt)(7) (period end) | 36.3 | 70.8 | (112.9) | +149.2 | | |

* Includes France, Brazil and Holding   ** Currency neutral basis   *** Last twelve months

49.     On the same day, Cnova filed its Semi-Annual Report with the SEC as an exhibit to a Form 6-K for the six months ended June 30, 2015. Therein, the Company stated: "For half year 2015, restructuring expenses were €11.7 million" consisting partly of "costs related to . . . strengthening the efficiency and documentation of our processes and controls to comply with the

Sarbanes-Oxley Act (€0.8 million)." The Company's 6-K was signed by Defendant Almeida, and the report reaffirmed the Company's financial results previously announced on the same day.

50.     On October 28, 2015, Cnova issued a press release announcing its third quarter 2015 financial results. Therein, the Company, in relevant part, stated:

### 3rd Quarter 2015 Financial Performance

- **Gross merchandise volume (GMV)** amounted to €1,121 million for the 3rd quarter 2015, increasing +17.6% on a constant currency basis compared to the same period in 2014. After taking into account the strong negative impact (-15.1%) of the depreciation of the Brazilian real versus the Euro, reported GMV grew by +2.5%. At Cdiscount France, total GMV was up +15.9%. At Cnova Brazil, GMV increased by +18.1% on a constant currency basis as promotional pricing increased in response to aggressive competitor pricing.

  The **marketplace** share of total GMV increased 1,032 basis points for the 3rd quarter 2015 and reached 22.7% compared to 12.4% for the 3rd quarter 2014. Cdiscount France's marketplace share reached 29.8%, while Cnova Brazil's was 12.8%. As of September 30, 2015, active marketplace sellers increased by +97% to 10,400 while the number of marketplace product offerings expanded from 11.4 million to 26.0 million (+129%).

- **Net sales** totaled €781 million in the 3rd quarter 2015, up +9.1% on a constant currency basis compared to the 3rd quarter of 2014. The rate of change was -6.7% after taking into account the negative exchange rate impact of -15.8%.

  - Net sales at Cdiscount France were €403 million, up +6.8% on a high comparison basis, and partly reflected the Group's emphasis on gross margin improvement during the 3rd quarter 2015. Home furnishings and household appliances accounted for approximately half of direct sales and recorded double-digit growth. Marketplace commissions increased by +84% y-o-y.

  - Net sales at Cnova Brazil increased +9.8% to R$1,516 million (reported: €371 million, -18.9%). Marketplace commissions grew by +255%.

  - Net sales from international operations amounted to €8 million, up 213.7%, and were driven primarily by activity in Colombia, Thailand and Vietnam.

- **Gross profit** was resilient and totaled €97 million with an associated gross margin of 12.5% (12.6% like-for-like, that is, excluding the impact from international expansion outside France and Brazil).

    - Gross profit at Cdiscount France increased more than 20% and the gross margin improved by 186 basis points thanks to the growing marketplace offer as well as lower promotional activity during the 3rd quarter 2015.

    - At Cnova Brazil, the sharp slowdown in consumer demand combined with an aggressive pricing environment more than offset the positive impact of marketplace expansion. As a result, gross margin declined by 352 basis points.

- **SG&A** costs increased to €119 million (15.2% of net sales compared to 13.4% of net sales in 3Q14). Most of this increase (€6 million) was related to new costs associated with international operations. On a like-for-like basis, SG&A costs increased 1.0% including higher marketing expenses as well as higher IT spend for platform upgrades, especially in mobile technology.

- As a result, **operating EBIT** totaled € (22) million, including Cdiscount France at +€1 million and Cnova Brazil at € (14) million. After taking into account other expenses of €7 million (mostly restructuring costs related to Panama/Ecuador/Kids and Garden operations closure and impairment of obsolete IT platform assets), **total operating profit** during the quarter was € (29) million.

- **Net financial expense** was €17 million, stable (-1.1%). The increase in the Brazilian interest rate (SELIC) in the period was offset partially by lower average number of installments in Cnova Brazil sales (7.2 average installments in 3Q15, down from 7.8 average installments in 3Q14).

- **Net loss** including discontinued activities amounted to € (37) million with an adjusted EPS of € (0.06).

51.     The above statements contained in ¶¶43-50 were materially false and/or

misleading when made because Defendants failed to disclose: (1) that the Company overstated

net sales; (2) that the Company failed to properly write-off the value of certain returned items;

(3) that there was a material discrepancy in accounts receivable related to the damaged/returned

items; (4) that, as such, the Company's EBIT was overstated; (5) that the Company lacked

adequate internal controls; and (6) that, as a result of the foregoing, the Company's financial statements and Defendants' statements about Cnova's business, operations, and prospects, were materially false and misleading at all relevant times.

### Disclosures at the End of the Class Period

52.     On December 18, 2015, after the market closed, Cnova issued a press release entitled "Cnova N.V. Initiates a Review of Inventory in Brazil." Therein, in relevant part, the Company disclosed that its Board of Directors engaged legal advisors and external forensic accountants to perform a review of issues related to inventory management. According to the Company, the issues involve the handling of product returns and damaged product inventory at distribution centers of Cnova's Brazilian subsidiary, Cnova Comércio Eletrônico S.A. (Cnova Brazil).

53.     On this news, shares of Cnova declined $0.53 , or nearly 18% to close at $2.42 on December 21, 2015, on unusually heavy volume.

54.     On January 12, 2016, the Company issued a press release entitled "Cnova — Update on Investigation into Brazil Inventory Management and Other Topics" confirming that the Company engaged in improper accounting practices. Therein, in relevant part, the Company disclosed:

> As of the date of this press release:
>
> - Investigations performed so far in connection with inventory management have uncovered a potential overstatement of Cnova net sales by approximately R$110 million (approximately €30 million) on a cumulative basis as of December 31, 2015 (adjusted in 4Q15 numbers on a preliminary basis).
>
> - A comprehensive physical count as of December 31, 2015, of all seven of its distribution centers in Brazil has been completed with the support of

external consultants. The results currently indicate that no significant adjustment is necessary based on the inventory count. They indicate, however, that a write-off linked to the valuation of damaged/returned items, which represents approximately 10% of total inventory, will be necessary. In addition, a material discrepancy in accounts receivable related to the damaged/returned items was also identified. The combined impact, based on preliminary estimates, would result in non-cash provisions of between R$110 — 130 million (approximately €30 — 35 million) that would reduce Cnova's EBIT.

* * *

**Accounts Payable at Cnova Brazil**

The company has identified additional supplier or vendor accounts payable balances in the amount of approximately R$70 million (approximately €20 million). A related provision is also planned to be booked that will reduce Cnova's EBIT.

* * *

**Benchmark on Inventory Valuation**

As a result of benchmarking of inventory valuation of e-commerce companies, warehouse reception and storage costs will no longer be incorporated into a retail-sector inventory valuation but directly expensed through income as is widely practiced in the e-commerce sector. The cumulative impact is a negative one-off of €10 million.

* * *

The company stresses that the assessment of the impact of the above on 2015 and potentially prior periods (annual consolidated financial statements and quarterly financial communication) is currently underway.

* * *

**Fourth Quarter and Full Year 2015 Financial Results Release Date**

Subject to progress of the ongoing inventory management investigation in Brazil, Cnova currently plans to release Fourth Quarter and Full Year 2015 Financial Results on February 24, 2016, at 07:45 CET.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired Cnova securities: (1) pursuant and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the Company's IPO on or about November 19, 2014, seeking to pursue remedies under the Securities Act; and/or (2) between November 19, 2014 and December 18, 2015, inclusive, seeking to pursue remedies under the Exchange Act; and were damaged thereby (collectively, the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

56.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Cnova's securities were actively traded on the Nasdaq Stock Market (the "NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Cnova shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Cnova or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

59. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Cnova ; and

(c) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

61. The market for Cnova's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Cnova's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Cnova's securities

relying upon the integrity of the market price of the Company's securities and market information relating to Cnova, and have been damaged thereby.

62.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Cnova's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Cnova's business, operations, and prospects as alleged herein.

63.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Cnova's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

64.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

65.     During the Class Period, Plaintiff and the Class purchased Cnova's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

66.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Cnova, his/her control over, and/or receipt and/or modification of Cnova's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Cnova, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

67.     The market for Cnova's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Cnova's securities traded at artificially inflated prices during the Class Period. On January 8, 2015, and January 13, 2015, the Company's shares closed at a Class Period high of $8.49 per share. Plaintiff and other members of the Class purchased or otherwise acquired the

Company's securities relying upon the integrity of the market price of Cnova's securities and market information relating to Cnova, and have been damaged thereby.

68. During the Class Period, the artificial inflation of Cnova's share price was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Cnova's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Cnova and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

69. At all relevant times, the market for Cnova's securities was an efficient market for the following reasons, among others:

(a) Cnova ordinary shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Cnova filed periodic public reports with the SEC and/or the NASDAQ;

(c) Cnova regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public

disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Cnova was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

70.     As a result of the foregoing, the market for Cnova's securities promptly digested current information regarding Cnova from all publicly available sources and reflected such information in Cnova's share price. Under these circumstances, all purchasers of Cnova's securities during the Class Period suffered similar injury through their purchase of Cnova's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

71.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Cnova who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 11 of The Securities Act
### (Against the Section 11 Defendants)

72.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

73.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Section 11 Defendants.

74.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

75.     Cnova is the registrant for the IPO. The Section 11 Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

76.     As issuer of the shares, Cnova is strictly liable to Plaintiff and the Class for the misstatements and omissions.

77.     None of the Section 11 Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

78.     By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

79.     Plaintiff acquired Cnova shares pursuant and/or traceable to the Registration Statement for the IPO.

80.     Plaintiff and the Class have sustained damages. The value of Cnova ordinary shares has declined substantially subsequent to and due to the Section 11 Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of The Securities Act
### (Against the Section 11 Individual Defendants)

81.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

82.     This count is asserted against the Section 11 Individual Defendants and is based upon Section 15 of the Securities Act.

83.     The Section 11 Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Cnova within the meaning of Section 15 of the Securities Act. The Section 11 Individual Defendants had the power and influence and exercised the same to cause Cnova to engage in the acts described herein.

84.     The Section 11 Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

85.     By virtue of the conduct alleged herein, the Section 11 Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## THIRD CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against the Company and the Individual Defendants)

86.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Cnova's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

88.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Cnova's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

89.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Cnova's financial well-being and prospects, as specified herein.

90.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Cnova's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Cnova and its business

operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

91.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

92.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Cnova's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations,

financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

93.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Cnova's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Cnova's securities during the Class Period at artificially high prices and were damaged thereby.

94.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Cnova was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Cnova securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

95.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

96.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**FOURTH CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**(Against the Individual Defendants)**

97.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

98.     The Individual Defendants acted as controlling persons of Cnova within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

99.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

100. As set forth above, Cnova and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

        Plaintiff hereby demands a trial by jury.

Dated:  January 22, 2016

                                  Respectfully submitted,

                                  **POMERANTZ LLP**

                                  */s/ Jeremy A. Lieberman*
                                  Jeremy A. Lieberman
                                  J. Alexander Hood II
                                  Marc Gorrie
                                  600 Third Avenue, 20th Floor
                                  New York, New York 10016
                                  Telephone:  (212) 661-1100
                                  Facsimile:  (212) 661-8665
                                  Email:  jalieberman@pomlaw.com
                                        ahood@pomlaw.com
                                        mgorrie@pomlaw.com

                                  **POMERANTZ LLP**
                                  Patrick V. Dahlstrom
                                  10 South La Salle Street, Suite 3505
                                  Chicago, Illinois 60603
                                  Telephone:  (312) 377-1181
                                  Facsimile:  (312) 377-1184
                                  Email:  pdahlstrom@pomlaw.com

                                  ***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, **Charles Dumon**_____, make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Cnova N.V.. ("Cnova" or the "Company"), and authorize the

filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Cnova securities at the direction of plaintiffs counsel or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Cnova securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Cnova

securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as

set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed  January 8,2016
          _____
                (Date)

                              _____
                                   (Signature)

                              Charles F. Dumon
                              _____
                                (Type or Print Name)

{00188143;1 }

**CNOVA N.V. (CNV)**                                                     **Dumon, Charles**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 11/20/2014 | Purchase | 25 | $7.4100 |